UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 6:14-cv-191-KKC-EBA

SHANE JEFFERSON BEGLEY,                                                    PLAINTIFF,

V.                     **MAGISTRATE JUDGE'S
                       REPORT AND RECOMMENDATION**

DENVER TYREE, et al.,                                                      DEFENDANTS.
                       *** *** *** *** ***

## INTRODUCTION

On September 17, 2016, while a detainee at the Laurel County Detention Center ("LCDC"), Plaintiff Shane Jefferson Begley was involved in a fight with another inmate. [R. 46-1 at 2]. Officers Denver Tyree and Timmy Wampler responded to the scene, and restrained both inmates in order to restore order. During the restraint, Plaintiff was taken to the ground by Tyree and Wampler, and Plaintiff maintains that his tooth was broken upon contact with the floor.

Afterwards, nursing staff was called to evaluate Plaintiff's condition, and stitched his lip. [R. 39 at 5]. Plaintiff's sutures were removed a week later. [R. 66 at 5]. The morning following the incident, Lieutenant Rodney Gay questioned Begley about the incident, and allegedly concluded that officers acted in accordance with jail policy and procedure. [R. 39 at 5]. Over the next few days, Plaintiff filed a number of grievances stating that he was suffering from tooth pain, until Jailer Jamie Mosley visited Begley on October 15, 2016, and, observing a need for further treatment, scheduled his dentist appointment. [R. 39 at 6]. Plaintiff subsequently received treatment outside the LCDC facility from local dentist Chris Herren, DMD, on two separate occasions; once on October 22, 2013 (a total of 35 days after the September 17, 2013

1

altercation), and again on November 1, 2013. [R. 66 at 5]. Plaintiff asserts his front tooth was surgically removed as a result of the injury. [R. 1 at 2]; [R. 39 at 7].

On September 8, 2014, Begley filed a *pro se* action alleging his constitutional rights were violated, claiming that Defendant Denver Tyree used excessive force to restrain him following the fight with another inmate, [R. 39 at 4], and claiming that Defendant Jamie Mosley was deliberately indifferent by denying him appropriate dental care for his injuries. [R. 1 at 3]; [R. 39 at 6]. Pursuant to the Court's Order, this matter has been referred to the undersigned to conduct all further proceedings, including preparing proposed findings of fact and recommendations on any dispositive motions. [R. 18].

This matter is before the Court on the Defendants Denver Tyree, Jamie Mosley, and Laurel County, Kentucky's First Motion for Summary Judgment. [R. 46]. For reasons set forth below, the undersigned RECOMMENDS that their motion be GRANTED, that all other remaining motions be DENIED AS MOOT, and that this matter be DISMISSED WITH PREJUDICE and stricken from the Court's active docket.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion

and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party carries its initial burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute over a material fact is only a "genuine issue" if a reasonable jury could find for the nonmoving party on that issue. Mickowski v. Visi-Trak Worldwide, LLC, 415 F.3d 501, 507 (6th Cir. 2005) (citing Cockrel v. Shelby County Sch. Dist., 270 F.3d 1036, 1048 (6th Cir. 2001)). All evidence must be viewed in a light most favorable to the party opposing the motion. Anderson, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479–80 (6th Cir. 1989).

## ANALYSIS

Having reviewed the record, and for reasons set forth below, the Court finds no genuine issue of material fact exists as to Plaintiff's constitutional claims, and Tyree, Mosley, and Laurel County's motion for summary judgment should be granted.

**A.** **Laurel County, Kentucky**

Plaintiff alleges that Laurel County, Kentucky is liable to him for the violations of his constitutional rights because it is "responsible for overseeing the practices and procedures of jail policy". [R. 1 at 2–3]. He alleges that the use of excessive force was "consistent with jail policy." [Id.]. His response further blames Laurel County for failing to "investigate his claim(s) or to take remedial action against the individual(s) who prompted and induced his injuries and/or Constitutional harms." [R. 61 at 26]. Defendants' summary judgment motion disputes any

3

alleged municipal liability on the part of Laurel County, arguing that there is no direct causal link between any alleged "policy or custom" and the alleged constitutional violation. [R. 46-1 at 17–18]. When a § 1983 claim is made against a municipality, a reviewing court must analyze two distinct issues: (1) whether the harm was caused by a constitutional violation; and (2) if so, whether the municipality was responsible for that violation. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). However, in order for municipal liability to exist, there must also be some direct causal link between the municipality's policy or custom and the constitutional deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Deaton v. Montgomery County, Ohio, 989 F.2d 885, 889 (6th Cir. 1993). Importantly, a municipality "cannot be held liable solely because it employs a tortfeasor," nor under the doctrine of *respondeat superior* in a § 1983 suit. Garretson v. City of Madison Heights, 407 F.3d 789, 795 (6th Cir. 2005); see also Stemler v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997) (municipality may be held liable under § 1983 for a constitutional violation directly attributable to it, but § 1983 does not impose vicarious liability on a municipality for constitutional torts of employees).

To establish this causal link, the plaintiff is required to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Garner v. Memphis Police Dep't, 8 F.3d 358, 363–64 (6th Cir. 1993). see also Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994); Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

Here, Begley has made no showing that any Laurel County policy or custom resulted in a constitutional violation. Further, he makes no effort to argue how an alleged policy or custom was the "moving force of the constitutional violation," to establish Laurel County's liability

4

under § 1983. Searcy, 38 F.3d at 286; Polk, 454 U.S. at 326. The Court finds no evidence of any policy or custom which, if followed, caused an injury of constitutional prorportions rendering the county liable for LCDC officer's alleged use of excessive force, and Laurel County is entitled to summary judgment.

**B.      Sgt. Denver Tyree**

Plaintiff alleges Sgt. Tyree used excessive force in response to the inmate altercation, contending Tyree "grabbed [Begley] by the shirt from behind and rode him to the floor and slammed his face/mouth into the concrete floor." [R. 1 at 2–4]. Regarding Tyree's instructions to get down, Plaintiff denies that he "refused to comply with the orders" to get on the ground. [R. 61 at 3]. Tyree counters that he used only the amount of force necessary to restrain Plaintiff and restore order after the fight. [R. 46-1 at 5]. Sgt. Tyree relies heavily upon the surveillance video footage to support his arguments, noting the video and accompanying audio "tell[] the entire story." [R. 46-1 at 5]. He stresses that the DVD footage, [R. 75], establishes that "Plaintiff ignored the officers' repeated commands to 'get on the ground,'" an order given "at least five times," and proves that Plaintiff's resistance to these commands was "more than a mere 'failure to move quickly enough' (citing Plaintiff at [R. 61 at 2])." [R. 66 at 2]. Tyree argues that, in light of the video footage and accompanying audio, the degree of force used was clearly not excessive, and was particularly reasonable given "the high-stress circumstances" surrounding the "chaotic scene in a jail cell," [R. 46-1 at 7], for which Plaintiff was largely responsible by participating in the fight.

The Eighth Amendment is the primary source of protection for a convicted prisoner asserting a § 1983 excessive force claim. Watkins v. Evans, 96 F.3d 1449 (6th Cir. 1996). As a pre-trial detainee at the time of the incident, Begley is entitled to the same Eighth Amendment

5

protections by way of the Fourteenth Amendment's Due Process Clause. Id.; see also Garretson v. City of Madison Heights, 407 F.3d 789, 795–96 (6th Cir. 2005). The validity of § 1983 excessive force claims is not governed by a single generic standard; rather, the reviewing court must identify the specific constitutional right allegedly infringed, and then judge the claim by reference to the specific constitutional standard which governs that right. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (U.S. 1989). In Graham, the U.S. Supreme Court explained the nuances in analyzing § 1983 excessive force claims, and the different standards which may apply, depending on the circumstances:

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force (citation omitted). In most instances, [] that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. See Tennessee v. Garner, supra, 471 U.S., at 7–22, 105 S.Ct., at 1699–1707 (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); Whitley v. Albers, 475 U.S. 312, 318–326, 106 S.Ct. 1078, 1083–1088, 89 L.Ed.2d 251 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard).

Graham, 490 U.S. at 394.

Thus, because he was a pretrial detainee subdued by officers, Plaintiff's excessive force claim is properly analyzed under the Eighth Amendment's "cruel and unusual punishment" standard. Because it is a settled rule that the "unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment," Whitley, 475 U.S. at 319, the analysis here is whether Defendants caused Begley unnecessary and wanton infliction of pain. Id.; Moore v. Holbrook, 2 F.3d 697, 700 (6th Cir. 1993). "The question whether the measure taken [by officers] inflicted unnecessary and wanton pain and suffering

ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Hudson v. McMillian, 503 U.S. 1, 6, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) (citing Whitley, 475 U.S. at 320–21). The extent of injury suffered by Begley is merely one factor to consider in determining whether the LCDC officers' use of force was "wanton and unnecessary" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment; however, the absence of serious injury does not end the Court's Eighth Amendment inquiry. Hudson, 503 U.S. 1. As the U.S. Supreme Court explained in Hudson, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident. Id., 503 U.S. 23.

The core inquiry in an Eighth Amendment excessive force claim is not the extent of the injury, but rather the "nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 130 S.Ct. 1175, 1179 (2010) (quoting Hudson, 503 U.S. at 7). The Sixth Circuit has adopted this approach. See, e.g., Shavers v. Bergh, No. 09-2475, 2011 WL 12473743, at *2 (6th Cir. July 15, 2011) (Sixth Circuit remanded where district court gave decisive weight to the nature of the prisoner's injuries rather than the nature of the force used). Despite the nature of Begley's resulting injuries, the operative focus of the Court's analysis here – the "nature of the force" – drastically weighs against Begley's excessive force claim, where no reasonable person would find that Tyree acted maliciously or sadistically in light of the DVD footage. Also important is the fact that the Sixth Circuit is reluctant to retrospectively scrutinize the judgment of officers faced with similar situations. Caldwell, 968 F.2d 595 (granted summary judgment for officer who subdued noncompliant inmate with stun gun and straight jacket; "[w]e will not require police officers

7

responding to a jail disturbance to second-guess the correctional officials' judgment in this manner," id. at 601); see also Griffin v. Hardrick, 604 F.3d 949, 954 (6th Cir. 2010) (videotape showed officer's use of leg-sweep maneuver to bring detainee to floor did not constitute excess force; "an official's decision to use force is entitled to deference," id.). Courts elsewhere have also routinely granted officers summary judgment where available video footage confirms the use of objectively reasonable force. See, e.g., Hurt v. Birkett, 566 F. Supp. 2d 620, 633 (E.D. Mich. 2008) (video indicated officers applied force in a "good-faith effort to restore discipline"); see also Nifas v. Coleman, 528 F. App'x 132 (3d Cir. 2013) (video showed officers used objectively reasonable force in subduing inmate following an altercation).

This Court may properly consider videotape evidence at the summary judgment stage. See, e.g., Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (U.S. Supreme Court held that, in considering a deputy's summary judgment motion, the reviewing district court must view the facts in light of videotape which captured the events underlying plaintiff's excessive force claim, id. at 372). Having carefully reviewed the surveillance DVD footage, see [R. 75], the Court concludes that no genuine issue of material fact exists as to whether the degree of force used in restraining Begley was excessive.

The video and accompanying audio depict the events in their entirety. [R. 75]. At 0:38 seconds, an altercation begins between Begley and another inmate. They begin violently exchanging punches to the face, while numerous surrounding inmates watch passively. At 1:03, LCDC officers rush into the room, instructing Begley and the other inmate to "get on the ground!" numerous times. [R. 75 at 0:38-1:03]. Begley does not obey this instruction, however; he sits upon a nearby table top [id. at 1:06], folds his hands, and waits until officers approach him, take him by the arms, [id. at 1:08], walk him away from the table, and finally bring him to

the ground. [Id. at 1:11]. At this point, Begley alleges his dental injury occurs due to the impact with the floor. [Id.].

Based upon the footage, what Begley alleges to be unconstitutional "excessive force" by Tyree was more akin to an accidental trip-and-fall by the trio of men. At 1:11, Begley, Wampler, and Gay all slowly fall forward together, as their combined momentum cause them to all fall forward and brace for impact. [R. 75 at 1:16]. Furthermore, the video generally demonstrates the chaotic nature of the scene, featuring Begley and the other inmate exchanging violent punches to the face, while a room full of inmates watch on in anticipation, until guards arrive shortly thereafter. [Id.]. Begley insists the altercation can "hardly be construed as a chaotic scene," [R. 61 at 8], but the video establishes otherwise.

The video and audio show that Plaintiff did not obey officers' orders to get on the ground once fighting had ceased. Instead, he waited for Tyree and Wampler to approach him, take him by the arms, [R. 75 at 1:08], remove him from his seated position on the tabletop, and bring him to the ground. [Id. at 1:11]. Based upon the DVD, Begley "demonstrated no intention to comply with the officers' clear commands and instead willfully ignored them." [R. 66 at 2].

Although the DVD shows Tyree and Wampler using a certain amount of force to restrain Plaintiff, correctional officers do not violate an inmate's constitutional rights merely by using force to gain compliance with their commands. See, e.g., Combs v. Wilkinson, 315 F.3d 548, 557 (6th Cir. 2002) (use of mace to control an inmate was "not malicious or sadistic"); Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992) (use of stun gun to quell inmate protests did not violate their constitutional rights). Further, Begley alleges that Lt. Gay, upon interviewing him about the incident, reassured him that Tyree and Wampler "did exactly what they were supposed to do based upon their training and jail policy." [R. 39 at 5]. LCDC officers are permitted to use

9

a certain degree of force to restrain a non-compliant inmate. Where Begley blatantly resisted commands, Tyree was entitled to use a reasonable amount of force to gain compliance.

In Griffin v. Hardrick – a strikingly similar case featuring a pretrial detainee who became non-compliant, had to be restrained, had her leg broken in the process, and later unsuccessfully claimed her constitutional rights were violated – the Court rejected the detainee's excessive force claim, explaining the officer's use of force was warranted and not wanton, and defending the use of force in certain situations:

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

Griffin v. Hardrick, 604 F.3d 949, 954 (6th Cir. 2010).

Persuaded by the Sixth Circuit's deferential approach, and viewing all facts in the light most favorable to Plaintiff, the available video conclusively illustrates the insufficiency of Begley's excessive force allegations. The DVD shows that Sgt. Tyree made a bona fide, "good-faith effort to maintain or restore discipline," Hudson, 503 U.S. at 6, and refutes any notion that Tyree and Wampler were seeking to "maliciously and sadistically cause harm," id. at 7, or to otherwise inflict "unnecessary and wanton infliction of pain" upon Begley. Whitley, 475 U.S. at 319. Plaintiff goes so far as to call the force used against him "deadly physical force," [R. 61 at 4] – which, in Kentucky, is defined as "force which is used with the purpose (or knowledge of substantial certainty) of causing death or serious physical injury," KRS § 503.010 – but the force used by Tyree obviously fell short of this threshold. Contrary to Begley's assertions, the degree of force used by Tyree was not wanton, but objectively reasonable.

Other than emphasizing the nature of his dental injuries or offering recollections that are largely contradicted by the record, Begley provides no real evidence to support his excessive force claim. In fact, the question remains whether Begley's dental injury was even caused by Tyree and Wampler's restraining him; the DVD clearly shows Begley being punched in the face numerous times by another inmate, and as Defendants note, Begley has produced "no evidence or expert testimony to establish that his injuries were caused by the Defendants as opposed to closed-fist punches to the face." [R. 46-1 at 13]. The Court concludes, in light of the surveillance footage and the lack of rebuttal evidence presented by Plaintiff, that no reasonable jury could find for Plaintiff on the excessive force issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### C. Deputy Jailer Jamie Mosley

Though it is somewhat unclear what claims Plaintiff specifically asserts against Jamie Mosley, having construed his *pro se* arguments liberally, the Court concludes Begley has contended that Jamie Mosley's denial of medical care following the inmates' altercation constituted "cruel and unusual punishment," [R. 1 at 4], as did Mosley's alleged failure "to protect [Begley] from harm and [] the deliberate indifference executed by the Defendants." [R. 39 at 8].

The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Blackmore v. Kalamazoo Cty., 390 F.3d 890, 895 (6th Cir. 2004). Whether a convicted prisoner or pretrial detainee, an officer's deliberate indifference to one's need for medical attention suffices for a claim under § 1983. Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985).

Accordingly, pretrial detainees like Begley analogously receive protection from deliberate indifference under the Fourteenth Amendment's Due Process Clause. Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Garretson, 407 F.3d at 795–96. Put another way, an official's deliberate indifference violates an inmate's rights "[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care . . ." for a serious medical need. Estelle, 429 U.S. at 104; Blackmore, 390 F.3d at 895.

A plaintiff's constitutional claim for denial of medical care has both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Napier v. Madison Cty., Ky., 238 F.3d 739, 742 (6th Cir. 2001); Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000). The objective component requires the existence of a "sufficiently serious" medical need. Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 104. As the U.S. Supreme Court articulated in Farmer, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834; Brown, 207 F.3d at 867. As for the subjective component, the pre-trial detainee alleging deliberate indifference must show that the officer also subjectively had a sufficiently culpable state of mind in denying necessary medical care. Farmer, 511 U.S. at 838, 845; Garretson, 407 F.3d at 797. "Deliberate indifference" is not mere negligence, but rather, requires that the officer "knew of and disregarded a substantial risk of serious harm to [Plaintiff's] health and safety." Watkins, 273 F.3d at 686 (citing Farmer, 511 U.S. at 835–37). The official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "It is not enough that there was a danger of which an officer should objectively have been aware," yet remained unaware; he must have subjectively known of and drawn the inference as well. Id.; Watkins, 273 F.3d at 686.

To show Mosley's deliberate indifference, Begley must satisfy the objective component, showing that the pain he experienced was serious, and that a "sufficiently serious" medical need existed following the altercation. Farmer, 511 U.S. at 834. Begley must then also satisfy the subjective component, by showing Mosley had a "sufficiently culpable state of mind" underlying his allegedly delaying Plaintiff's dental care. See Garretson, 407 F.3d at 797; Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000). Such culpability requires more than mere negligence; it requires that Mosley "knew of and disregarded a substantial risk of serious harm" in delaying treatment. Watkins, 273 F.3d at 686; Farmer, 511 U.S. at 835–37. In other words, Mosley would have had to know that Begley had a serious medical injury in need of immediate treatment, but then denied or delayed his treatment on some wanton, vindictive basis. These subjective intentions cannot merely be shown through "factually unsupported, conclusory opinions." United States v. Michigan, 940 F.2d 143, 154 n.7 (6th Cir. 1991).

Plaintiff creates no question of fact as to the deliberate indifference claim against Mosley. Even assuming Begley satisfies the objective component, having alleged that the medical condition and resulting pain were sufficiently serious, he has not satisfied the subjective component because he has not revealed Mosley's "sufficiently culpable state of mind." Brown, 207 F.3d at 867. In fact, he offers no evidence whatsoever to this effect. For one, Plaintiff accuses Mosley of delayed treatment, but Plaintiff acknowledges he did in fact receive medical treatment immediately following the fight. [R. 39 at 4–5]. He recalls receiving medical treatment the same day as his injury, when he was seen by nurses employed by LCDC's health care provider, Southern Health Partners, who closed his wounds with sutures and stitches. [R. 66 at 5]. Plaintiff's response even acknowledges that, "when [Mosley] discovered the Plaintiff to be lingering in pain, [Mosley] took action to make sure the Plaintiff finally received the proper

13

medical treatment that was due to him," [R. 61 at 22], seemingly praising Mosley's timely intervention.

Although Plaintiff essentially argues that it took too long for Mosley to schedule his appointment with local dentist Dr. Herren on October 22, 2013, approximately a month after the September 17, 2013 incident, Begley never disputes that he received immediate medical treatment, and a month later, received additional treatment on two separate occasions when the pain persisted. [R. 66 at 5]. Based upon the evidence presented, the Court finds no "sufficiently culpable state of mind" in Mosley's alleged delay in ordering additional dental care for Begley. Garretson, 407 F.3d at 797; Brown, 207 F.3d at 867. Plaintiff offers no evidence as to Mosley's wanton intentions or culpable state of mind; he asserts Mosley "failed to take any remedial or disciplinary action against [his] subordinates for their indifference," [R. 61 at 22–23], but this assertion, with nothing more, is a "factually unsupported, conclusory" opinion which fails to indicate how Mosley was personally, directly indifferent to Plaintiff's needs. Michigan, 940 F.2d at 154.

In addition to falling short of the subjective component for deliberate indifference, Plaintiff has also failed to meet the objective component, having provided no real evidence to show that a "sufficiently serious" medical need existed during the delay in treatment. Blackmore, 390 F.3d at 899–900. His filings frequently recount the painful experiences he endured, stressing that his front tooth was eventually removed as a result of the injury, [R. 1 at 2]; [R. 39 at 7], but Begley otherwise offers no substantive evidence as to the injuries themselves, either immediately after the inmates' fight or over the course of the following month. Inmates alleging that a delay in medical treatment rose to a constitutional violation must place "verifying medical evidence in the record to establish the detrimental effect of the delay in

medical treatment to succeed." Napier, 238 F.3d at 742. Aside from his allegation that "Dentist Herron (sic) declared the injury to be of a serious nature and in need of immediate medical attention," [R. 39 at 7], and a handful of letters from his former attorney which reference his injuries, see [R. 1-1 at 1–2, 4], Begley provides no verifying evidence to demonstrate the severity of the injury or the consequences of the allegedly delayed treatment. Providing no reliable medical evidence as to how serious his dental injury was or how the delay exacerbated his injury, the Court concludes that the timing of Begley's medical treatment was reasonable under the circumstances. Blackmore, 390 F.3d at 899–900.

Notably, other courts faced with delayed medical treatment claims have frequently not found deliberate indifference on the part of correctional officers, upon determining that a delay, by itself, is generally not enough to impose liability. In Smith v. Prison Health Services, No. 97-4037, 1997 WL 797897, at *1 (N.D. Cal. Dec. 9, 1997), the plaintiff alleged he had suffered pain and mental stress by having to wait "several days" to see a dentist and have a bad tooth removed "immediately." Id. The district court held that the delay did not involve conduct "so reckless or wanton as to be tantamount to a desire to inflict harm." Id. In Smith, much like in the present case, a nurse previously saw the plaintiff prior to his dentist visit, and gave him pain medication until he could be scheduled for further treatment. Likewise, in Brown v. Bexar County Hosp. Dist., No. 15-CA-123-XR, 2015 WL 3971388, at *6 (W.D. Tex. June 30, 2015), the plaintiff alleged he received inadequate medical care for several decaying teeth which he alleged should have been pulled months ago, but officers' thirty-day delay in treatment did not constitute deliberate indifference. Id.

The Sixth Circuit has established that, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally

15

reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." Graham ex rel. Estate of Graham v. Cnty. of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004); Westlake v. Lucas, 537 F.2d 857 (6th Cir. 1976). Medical care disputes can only create a constitutional claim when the care falls short of "contemporary standards of decency," Estelle, 429 U.S. at 103, or constitutes "unnecessary and wanton infliction of pain." Durham v. Nu'Man, 97 F.3d 862, 868 (6th Cir. 1996).

Based upon the available evidence, no question of fact remains as to Mosley's alleged deliberate indifference; Mosley's minor role in these events did not amount to deliberate indifference. To briefly summarize Plaintiff's version of the facts, after the inmate altercation on September 17, 2013, Begley immediately received some basic medical treatment for his dental injury. Plaintiff then complained of his injuries "[o]n a daily basis," [R. 39 at 5], and continued to receive ibuprofen, [id. at 6], until Jailer Mosley was contacted and summoned "on or about October 15, 2013" to see Begley. [Id.]. Mosley then arranged for his visit to the local dentist, and Begley was seen by dentist Dr. Herren "on or about October 22, 2013." [R. 39 at 6–7]. Plaintiff's facts, taken to be true, do not create a question of fact as to whether Mosley's conduct fell short of "contemporary standards of decency," Estelle, 429 U.S. at 103, or constituted "unnecessary wanton infliction of pain." Durham, 97 F.3d at 868. The existence of a "sufficiently serious" medical need has not been proven, Blackmore, 390 F.3d at 899–900, and there is no evidence that Mosley understood the injury's apparent urgency but consciously chose to disregard it, no evidence as to how the delay in treatment was unconstitutional, and to be fair, no real evidence that any delay in treatment was even caused Mosley at all. Where no genuine issue of material fact exists as to all claims against him, summary judgment for Jailer Jamie Mosley is proper.

16

**D. Other Related Motions**

A number of additional motions remain pending in this matter. Denver Tyree has filed: a Motion to Strike Plaintiff's Expert Report and Testimony, [R. 64]; a Motion to Strike Plaintiff's Response in Opposition to the Summary Judgment Motion, [R. 77]; a First Motion for Extension of Time to Complete Discovery, [R. 78]; a Motion to Clarify Order Staying Discovery, [R. 81]; a Motion for Joinder, [R. 86]; and a First Motion for Protective Order, [R. 87]. Ragan Loughran has filed a Motion to Join the Motion for Extension of Time, [R. 79], and Rodney Gay and Timmy Wampler have filed a First Motion to Stay Discovery, [R. 85]. Most recently, Plaintiff filed a Motion for Extension of Time to Complete Discovery, [R. 89], and a Second Motion to Compel Discovery, [R. 93].

However, the undersigned previously recommended that Defendants Timothy Wampler, Rodney Gay, and Reagan Loughran's Motions to Dismiss, [Rs. 50, 52, 65], each be granted. See [R. 90]. As of this report and recommendation, the Court has also recommended that Defendants Denver Tyree, Jamie Mosley, and Laurel County, Kentucky's Motion for Summary Judgment, [R. 46], be granted. Additionally, on March 9, 2016, this Court recommended that Custody Officer Chase Hamblin, Regina Long, and Azul Shelton be dismissed, finding Plaintiff had failed to adequately state a claim against them. [R. 40].

Where the Court previously recommended dismissal of Hamblin, Long, and Shelton, and has since recommended the dismissal of Tyree, Wampler, Gay, Mosely, Loughran, and Laurel County, the sole remaining named Defendant is David Westerfield, Laurel County's Judge Executive. Where the amended complaint names Westerfield but asserts no claims against him, the Court had previously concluded that Westerfield should also be dismissed, but due to a clerical oversight, the March 9, 2016 Report and Recommendation [R. 40] never explicitly

17

recommended dismissal of Westerfield. As a result, on June 28, 2016, Laurel County filed a Motion to Clarify, [R. 82], asking whether Mr. Westerfield is still a named party in this suit. While Westerfield is still technically a named Defendant, the Court is recommending his dismissal as well, stressing his dismissal was originally contemplated upon preliminary review of the amended complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, but was never explicitly included in the Court's order. [R. 40].

Where the Court recommends dismissal of all Defendants as of this Report and Recommendation, the undersigned recommends that all remaining pending motions be denied as moot, and further recommends that Plaintiff Shane Jefferson Begley's 42 U.S.C. § 1983 suit be dismissed in its entirety.

## **RECOMMENDATION**

Assuming all allegations in the amended complaint are true and construing all facts in a light most beneficial to him, Plaintiff has failed to overcome Defendants' motions to dismiss and for summary judgment. Having considered the matter fully, and being otherwise sufficiently advised,

IT IS HEREIN RECOMMENDED that:

(1) Defendants Denver Tyree, Jamie Mosley, and Laurel County, Kentucky's Motion for Summary Judgment [R. 46] be GRANTED;

(2) All other pending motions be DENIED AS MOOT; and

(3) This matter be DISMISSED WITH PREJUDICE and stricken from the Court's active docket.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. United States v.

Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed September 14, 2016.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge